IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| YVETTE MADISON | : | CIVIL ACTION |
| --- | --- | --- |
|  | : | NO. 09-3400 |
| v. | : |  |
|  | : |  |
| PHILADELPHIA HOUSING AUTHORITY | : |  |
| AND ELYSE BURGESS | : |  |

O'NEILL, J.                                                         JUNE 23, 2010

## MEMORANDUM

Plaintiff Yvette Madison, proceeding pro se, filed a complaint against defendants Philadelphia Housing Authority and Elyse Burgess, alleging retaliation for having filed a Pennsylvania Human Rights Commission complaint. Defendants have moved for summary judgment. Plaintiff filed a response. For the reasons stated below I will grant defendants' motion and dismiss plaintiff's claims.

## BACKGROUND[1]

Since 1995, Madison has lived in PHA housing in the Johnson Homes development. Elyse Burgess has worked for PHA since 1984 and has been the site manager for Johnson Homes since 2002.

During her time living there, Madison claims to have been subjected to multiple "assaults" by other neighbors and that her neighbors would call Burgess to register false complaints against her. On August 31, 2006, Woodrow Lee, presumably a PHA worker, made

---

[1] The following facts are undisputed by the parties for the purposes of defendants' motion only. I will construe the facts in the light most favorable to the non-moving party.

an offensive comment to her.² Def. Exh. I. In approximately August or September of 2006, Madison told Burgess that she had been sexually harassed by Lee. Madison Dep. 64-5; see also at 61. Burgess did not file the paperwork necessary to register Madison's complaint. Instead, she told Madison that she knew Lee would not do something like that and that if it had been any other person Burgess would have believed Madison. Def. Exh. I.

On November 3, 2006,³ Madison filed a two-count complaint against PHA with the Pennsylvania Human Relations Commission alleging discrimination based upon her disability and sex. Def. Exh. I. She told the PHRC about Lee's comment. Mad Dep. 134. Someone from PHRC told Madison that they could not take her complaint "unless he had made physical direct contact with [Madison]." Id. Madison's PHRC complaint alleged that on August 31, 2006, Lee was cutting hedges with a chain saw when he grabbed her crotch area and then made the offensive comment. Def. Exh. I at 3. Madison made up the part about him grabbing her crotch area so that the PHRC would take her complaint. Madison Dep. 134-35. The PHRC complaint further alleged that Madison reported the incident to Burgess who refused to register her complaint. Def. Exh. I at 2, 4.

After Madison filed her PHRC complaint, Burgess made threats of having Madison evicted and told Madison "it's her word against mine." See Madison Dep. 60, 128-9. Specifically, Madison recalled an incident that arose in approximately June 2007. Madison Dep.

---

² Madison, seeing Lee cutting hedges, commented to Lee, "don't massacre that bush" in a joking manner. Def. Exh. I at 3. They laughed and then he put the chain saw down, walked up to her and said, "how would you like it if I massacred your bush?" Id.

³ Madison recalled going to the PHRC in September 2006, Madison Dep. at 65, but the complaint is signed by her and dated November 3, 2006. Def. Exh. I. This difference is immaterial; I will accept the date on the document as the date it was filed.

2

64. Madison had obtained a restraining order against a resident in PHA's Raymond Rosen housing development. Id. at 62. She went to see the Raymond Rosen manager to show him a copy of the order. Id. The manager grew tired of Madison complaining of the resident on this occasion and called Burgess. Burgess was on the speakerphone and Madison could hear Burgess's statements to the Rosen manager. Id. After hanging up, Madison went to Burgess's office and told her "you know what, you're evil . . . the only reason why you said [to the Rosen manager] that I deserved to be evicted was because of the sexual harassment case . . . that's the only reason why you said that I deserved to be evicted is because you know I'm filing a sexual harassment case against your friend, your co-worker." Id. at 63-4.

      During the months of July, August and September 2007, Burgess's office received several complaints concerning Madison, including that Madison: banged on her walls disturbing neighbors, verbally assaulted her neighbors, stole her neighbor's cat, beheaded a cat outside of her front door causing a mess which PHA had to clean up, invited a neighbor's child over for dinner and locked the door when the child's family came to retrieve her prompting the police to be called to the scene and shouted religious passages and told passers-by that they were going to hell from her front steps until Burgess called the police. Burgess Decl. at 2. Additionally, one neighbor informed Burgess's office that he had been advised to get a restraining order against Madison by the PHA police and Philadelphia police department. Id. Madison admits there was an incident involving a neighbor's child and that she had called another neighbor "evil" and a "lying hypocrite," but contends the other alleged incidents are lies. See also Madison Dep. 79-82 (admitting she invited the child over for dinner, that she refused to release the girl because she feared the child's mother would beat the child, and that they had to break her screen door to get

3

the child out); 120 (other neighbors complained to Burgess in front of Madison but they were "lying"); 123-24.

On September 25, 2007, Madison received notice of lease termination which informed her that she had 30 days to move out and 10 days to file a grievance. Def. Exh. D. The reason stated in the notice for her termination was "Violation of Lease: Section HI: Disturbing other tenant's peaceful enjoyment of their accommodations." Id. A copy of the notice produced by PHA is dated September 16, 2007. Id. Defendant asserts that the notice should have been dated September 25, 2007, the undisputed date that the notice was actually served. Def. Br. at 4 n.2.

On September 28, 2007, Madison went to Burgess's office to file a grievance. The grievance stated, "[t]his is an unlawful eviction Because [sic] of my sexual harassment suit I filed and the clients claiming I disturbed their peace are lying - they are the ones guilty of physically and verbally asaulting [sic] me and I have a Police Report to prove it." Def. Exh. E. A grievance hearing was scheduled for November 2, 2007.[4] Madison did not attend the grievance hearing because she "was threatened by Elyse numerous times in her office that it's her word against mine." Madison Dep. 18, 59. Instead, on November 1, 2007, she left Johnson Homes because she believed "[t]here was no point in fighting it," Madison Dep. 18, and "to prevent somebody from physically removing [her]," Madison Dep. 50. At the time she left, she owed no rent on her apartment. She signed a Notice of Intent to Vacate on December 21, 2007. Def. Exh. G. She immediately moved into a shelter from which she was subsequently evicted and has been forced to move between other shelters, hospitals and the homes of family members since.

---

[4] Madison believed the hearing had been scheduled for November 1, 2007, but the Order dismissing her grievance for failure to attend noted the date as November 2, 2007. Def. Exh. F.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255.

When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the moving party. Ely v. Hall's

Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

ANALYSIS

The Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3631, "was designed to provide nationwide fair housing to minorities who had previously been victims of invidious racial discrimination" Mitchell v. Cellone, 389 F.3d 86, 87 (3d Cir. 2004) (citing Jones v. Alfred H. Mayer Co., 392 U.S. 409, 439-440 (1968)). The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise and enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.[5]

> To establish a prima facie case of retaliation [under §3617], a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. If a plaintiff has presented a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive.

Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464-65 (9th Cir. 1994)); see also Campbell v. Robb, No. 04-1567, 2006 WL 45253, at *10 (6th Cir. Jan. 9, 2006).

Defendants set forth three arguments as to why Madison failed to state a prima facie case:

---

[5] Plaintiff's complaint does not specify under which statute her claim arises. Defendant has fairly interpreted the complaint as alleging a claim under the Fair Housing Act.

6

1) Madison's complaint to the PHRC was not a protected activity because it was knowingly false; 2) Madison did not face an adverse action because she voluntarily moved out and failed to attend her grievance hearing; 3) there was no causal link between the filing of the complaint in November 2006 and her notice of lease termination served in September 2007. I find that even assuming plaintiff had made her prima facie case, the defendants have articulated a legitimate non-discriminatory reason for the decision to evict Madison and she has failed to demonstrate that reason was pretext. On several occasions immediately preceding plaintiff's receipt of her notice of termination, PHA and Madison's neighbors complained or had to call the police in response to her behavior. Indeed, plaintiff's notice of termination cited this as the reason for her eviction. This was a legitimate and non-discriminatory reason for taking action against Madison. See Hall v. Meadowood Limited Partnership, 7 Fed. Appx. 687, 690 (9th Cir. 2001). Madison has presented no evidence that her behavior was a pretext for PHA to evict her other than her conclusory allegations that Burgess harbored an ill-will toward her for filing the PHRC complaint. That complaint, however, had been filed over a year before. There is no explanation why Burgess, if she intended to evict Madison for filing the complaint, did not do so at that time.

      I will grant defendant's motion for summary judgement. An appropriate Order follows.